**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 13 |
| | : | |
| James Alva McNeal, | : | Case No. 4:20-02028-MJC |
| | : | |
| Debtor. | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

| | | |
|---|---|---|
| James Alva McNeal, | : | |
| | : | |
| Plaintiff, | : | Adversary Proceeding |
| | : | No. 4:20-00060-MJC |
| v. | : | |
| | : | |
| Lyle J. Brouse, Jr., | : | |
| Jessica Brouse, | : | |
| | : | |
| Defendants. | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

# O P I N I O N

## I.   INTRODUCTION

In July 2018, Plaintiff/Debtor James McNeal ("Plaintiff") entered into an agreement with

Defendants Lyle and Jessica Brouse ("Defendants") for the sale of a parcel of real estate and, with

the assistance of counsel, the parties subsequently executed a deed conveying the property. Shortly

thereafter, Plaintiff contested the transaction claiming the deed did not reflect the parties'

agreement for the sale of the property. Plaintiff believed he was conveying 1.5 acres for $5,000

but learned that his entire interest in the 22 acre property had been conveyed for $1.00. Once he

contacted Defendants regarding the supposed mistake, he claims Defendants agreed to rescind the

transaction. Defendants vigorously dispute Plaintiff's characterization of the events.

In 2020, Plaintiff filed bankruptcy and this adversary proceeding in an attempt to recover

Plaintiff's interest in the property. Plaintiff brought *inter alia*, claims for fraudulent transfer and

mutual rescission. In response, Defendants asserted counterclaims for breach of contract and slander of title against Plaintiff.

Currently before the Court are Plaintiff's motion in *limine*, motion for sanctions, and motion for summary judgment. For the reasons set forth below, the Court has determined that:

- Plaintiff lacks authority to bring a fraudulent transfer claim under 11 U.S.C. §548[1]

- There are genuine issues of material fact whether the parties mutually agreed to rescind the transfer

- Defendants failed to produce evidence to sustain their burden on their counterclaims

- The motion for sanctions is without merit on both procedural and substantive grounds

Consequently, the motion for summary judgment will be granted in part and denied in part and the motion in *limine* and the motion for sanctions will be denied.

## II.    BACKGROUND AND PROCEDURAL HISTORY

### A.    The Bankruptcy Case

On July 1, 2020, the debtor, James A. McNeal ("Debtor" or "Plaintiff") filed a voluntary Chapter 13 bankruptcy petition. He filed his schedules, statements, and other required documents on August 4, 2020. BK Dkt. # 17.[2] On Schedule A/B, Debtor listed real estate in Milton, Pennsylvania with a designation stating "fee simple if transfer rescinded." *See Id.* at 4. He listed no creditors with secured claims against him on Schedule D and approximately $25,000 ($24,491.25 of which is owed to family members) in unsecured claims on Schedule E/F. *See Id.*

---

[1] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. §101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("Bankruptcy Code").

[2] Docket entries referenced in the main bankruptcy case are designated as "BK Dkt." and in this adversary proceeding as "Dkt."

at 16, 25. Debtor is not employed but receives social security ($893.00) and a modest monthly contribution from an individual ($200.00). *See Id.* at 31. Less monthly expenses, Debtor has a monthly net income of $447.00. *See Id.* at 34.

On August 11, 2020, Debtor filed his Chapter 13 Plan ("Plan") which provides monthly plan payments to the Chapter 13 Trustee of $465 per month for 59 months and one payment of $181. *See* BK Dkt. # 18. The base amount under the Plan is $27,616. Debtor's Plan was confirmed on February 1, 2022. BK Dkt. # 49. As the plan payment represents over 40% of his very modest income, it is difficult to understand how the filing of a Chapter 13 case was in Debtor's best interest.

**B.     The Adversary Proceeding**

On July 17, 2020, Debtor/Plaintiff filed the complaint against Defendants Lyle Brouse, Jr. and Jessica Brouse initiating this adversary proceeding. Defendants filed a motion to dismiss based on, *inter alia*, insufficient service of process. The Court granted the motion but with leave to effect proper service on Defendants. *See* Dkt. # 15. Defendants subsequently filed a second motion to dismiss which the Court granted with leave to amend. *See* Dkt. # 32.

On June 28, 2021, Plaintiff filed an amended complaint ("Amended Complaint"), Dkt. # 34, which included five counts asserting claims for constructive fraudulent transfer, specific performance – rescission by mutual agreement, fraud, lack of consideration, and failure of consideration. Defendants responded with an answer and asserted a counterclaim against Plaintiff. *See* Dkt. # 37. The counterclaim was largely incomprehensible but seemed to allege a breach of contract claim. Plaintiff filed a series of motions to dismiss the counterclaim. *See* Dkt. # 44, 57, 73. The first two motions to dismiss were granted with leave to amend. *See* Dkt. # 54, 66. On

3

Defendants' third attempt, *see* Dkt. # 68 ("Amended Answer, Affirmative Defenses and Counterclaim"), at what should have been a simple exercise of pleading common law claims, the Court allowed the counterclaims alleging breach of contract and slander of title ("Counterclaims") to proceed and ordered Plaintiff to file an answer, finally closing the pleadings in June 2022.

The parties attempted to settle this matter through mediation in February and September 2022 with no success. *See* Dkt. # 84, 105.

On May 10, 2023, Plaintiff filed a motion for summary judgment ("Motion for Summary Judgment"). Dkt. # 113. Plaintiff moved for judgment in his favor on his constructive fraudulent transfer and "rescission" claims and both Counterclaims. The parties filed their respective briefs, *see* Dkt. #'s 121 - 123, and oral argument was scheduled for July 13, 2023.

In preparation for the argument, the Court discovered that Plaintiff failed to state any facts in his Statement of Material Facts and directed that an amended pleading be filed. *See* Dkt. # 124. Consequently, the argument was rescheduled to August 24, 2023. Upon conclusion of the argument, the Court took the Motion for Summary Judgment under advisement.

On the morning of the rescheduled argument, Plaintiff filed a motion to impose sanctions under Fed. R. Bankr. P. 9011 and 28 U.S.C. §1927 ("Sanctions Motion") and a motion in *limine* ("Motion in *Limine*"). Dkt. # 129, 130. Defendants filed responses to both motions and a hearing was held on October 26, 2023. The Sanctions Motion and the Motion in *Limine* were taken under advisement.

On February 27, 2024, the Court requested supplemental briefing on Plaintiff's authority to bring an avoidance action under §548 when it appeared that Plaintiff was not asserting §522(g)

4

or (h) in his Amended Complaint. The Court heard argument on April 17, 2024 and took the additional issue under advisement.

The three pending motions are fully briefed and ripe for disposition.

## III. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334 and the Standing Order of Reference of the U.S. District Court for the Middle District of Pennsylvania dated March 11, 2016. The pending matters are either core proceedings pursuant to 28 U.S.C. §157(b)(2) or the Court has "related to" jurisdiction. Venue is proper pursuant to 28 U.S.C. §1409(a).

## IV. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a) (made applicable to this adversary proceeding per Fed. R. Bankr. P. 7056), "The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *E.g.*, *Steele v. Cicchi*, 855 F.3d 494, 500 (3d Cir. 2017); *Transguard Ins. Co. of Am. Inc., v. Hinchey*, 464 F. Supp. 2d 425, 429 (M.D. Pa. 2006). Thus, the inquiry on a motion for summary judgment is to determine whether there is a disputed issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Hinchey*, 464 F. Supp. 2d at 430. "A dispute of material fact is 'genuine' only if the evidence 'is such that a reasonable jury could return a verdict for the non-moving party.'" *Holbrook v. Jellen*, 2017 WL 4401897, at *4 (M.D. Pa. 2017) (quoting *Anderson*, 477 U.S. at 248).

The moving party has the initial burden to demonstrate "the absence of a genuine issue of material fact." *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (quoting *Celotex Corp.*

5

*v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party meets this initial burden, then the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). On summary judgment, the court must draw all reasonable inferences in favor of the non-moving party. *United States v. 717 S. Woodward St.*, 2 F.3d 529, 533 (3d Cir. 1993).

If the moving party bears the burden of proof at trial, the party must "support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (citation omitted). When the moving party does not carry the burden of proof at trial, the moving party has the initial burden of showing the absence of a genuine issue of material fact. *In re Roemmele*, 2011 WL 4804833, at *4 (Bankr. E.D. Pa. 2011). The moving party "has no obligation to produce evidence negating its opponent's case. The moving party merely has to point to the lack of any evidence supporting the non-movant's claim." *Nat'l State Bank v. Fed. Reserve Bank of New York*, 979 F.2d 1579, 1582 (3d Cir. 1992) (citing *Celotex*, 477 U.S. at 323-25).

## V.     FACTS

Certain facts relating to the transfer of the property are undisputed.

On May 21, 2013, Plaintiff obtained a fee simple interest in the real estate located at 214 Muddy Run Road, Milton, Pennsylvania ("Property"). Sometime in mid-2018, Plaintiff and Defendants began discussing a sale of the Property. On July 26, 2018, the parties met with Graham Showalter, Esq. and signed a deed ("Deed") transferring some portion of Plaintiff's interest in the

Property to Defendants.[3]  Mr. Showalter prepared the Deed, which was then recorded in Northumberland County on July 27, 2018.

Plaintiff asserts the next series of events which are contested by Defendants.

After the Deed was signed, Plaintiff states that about a week later he learned in the newspaper that the entire parcel of real estate had been transferred – which is contrary to what he agreed.[4]  Plaintiff claims he agreed to transfer to Defendants 1.5 acres of the Property for $5,000. Defendants dispute this was the final agreement.  They claim that Plaintiff agreed to transfer the full 22.647 acres for $1.00 with Plaintiff retaining a life estate and the right to raise poultry on a portion of the Property.

In an attempt to rectify the situation, Plaintiff contacted local agencies for assistance.  He contacted the Area Agency on Aging to report that the transfer published in the newspaper did not reflect his agreement with Defendants.

At some point, he also contacted Defendants regarding the transfer.  On August 16, 2018, Plaintiff received a text message from Lyle Brouse, Jr., which indicated that he and his family would find another place to build.  Plaintiff believed this was an offer to rescind the transaction. He claims that Defendants agreed to meet him at Mr. Showalter's office on August 29, 2018. Plaintiff contacted North Penn Legal Services ("North Penn") for assistance at this meeting; however, no one was available that day and North Penn requested that the meeting be rescheduled.

---

[3] From the Deed, it appears that Plaintiff transferred the Property to himself and Defendants as tenants by the entireties. Therefore, as of the Petition Date, Plaintiff appeared to own some interest in the Property.  The extent of that interest is not before the Court and the Court makes no determination on that specific issue.

[4] Plaintiff alleges that he "struggles to comprehend complex transactions because of his known traumatic brain injury…." Am. Compl. at ¶53, Dkt. # 34.  There has been no independent or expert medical information provided to support this averment and the Court does not make any finding regarding Plaintiff's mental capacity.

On September 4, 2018, Plaintiff's Counsel spoke with Mr. Showalter and claims to have accepted Defendants' offer to rescind the transfer. Two days later, Ms. Martineau sent a letter confirming the conversation. Mr. Showalter did not respond until some weeks later with a letter dated September 25, 2018, which indicated only that another attorney was taking over the case.

## VI.    ANALYSIS

As stated previously, Plaintiff moves for summary judgment on his claims for mutual rescission and fraudulent transfer and on Defendants' Counterclaims for breach of contract and slander of title. The Court will address each count below.

### A.    Mutual Rescission

Count II of Plaintiff's Amended Complaint is entitled "Specific Performance – Rescission by Mutual Agreement." Plaintiff's claim is based on the parties' alleged "oral" agreement that he could rescind the transfer at any time, including after the closing. Plaintiff's contention is that they mutually agreed to rescind on August 16, 2018 via a text message. The message states:

> Hey Jim, i'm [sic] not sure what's being said or what your thoughts are but Jess, Kids [sic] and I want you in our lives no matter what. I dont [sic] want land to hinder our friendship. We still want you to get out of your apartment and not live out your days there with depression and hardships. Please call us this afternoon when I'm home from work. I said from day 1 you make final decisions [sic] and I meant it. I'm a man of my word. We can find another place to build and hopefully still be a part of your life. Thank you Jim.

Attachment to Plaintiff Reply Brief, Dkt. # 123-1.

Based on the text message, Plaintiff claims that there was a scheduled meeting with Mr. Showalter on August 29, 2018 to rescind the Deed but Plaintiff did not attend. Plaintiff then asserts that on September 4, 2018, North Penn contacted Mr. Showalter to accept the offer to vacate the

8

Deed but claims that Mr. Showalter withdrew the offer to rescind unless there was a guardianship put in place for Plaintiff. Plaintiff argues that his Counsel's September 6, 2018 letter ("September 6th Letter") to Mr. Showalter confirms all these facts.[5]

According to Plaintiff, the September 6th Letter confirms that Defendants agreed to mutually rescind but then withdrew the rescission by injecting a condition that Plaintiff be appointed a guardian. Plaintiff further asserts that the only response from Mr. Showalter was a facsimile indicating that he was no longer representing Defendants. Dkt. #123-1 at 3. Plaintiff argues that because Mr. Showalter did not dispute the contents of the September 6th Letter, they are admitted under Pennsylvania law, citing *Harry Rubin & Sons, Inc. v. Consol. Pipe Co. of Am.*, 153 A.2d 472 (1959).[6]

Defendants deny they agreed to rescind the agreement. Defendants suggest that the reference in the text message relates to the location of the house on the Property. Both Defendants submitted affidavits denying they ever agreed to rescind the transfer. Defendants have also offered the affidavit of Mr. Showalter who states that "at no time did [he] ever advise [Plaintiff's Counsel] that the transaction would be rescinded." Showalter Affidavit at ¶4, Dkt. # 128-1 at 33.

Pennsylvania law recognizes the concept of mutual rescission of a contract. The Pennsylvania Supreme Court has held that the "parties to a contract may at any time rescind it, either in whole or in part, by mutual consent, and the surrender of their mutual rights is sufficient

---

[5] This letter also states that if the transaction is not rescinded, Plaintiff "will either file a bankruptcy, and forcibly unwind the contract, or we will forcibly unwind the contract on the basis of lack of consideration in state court." Dkt. # 123-1. As set forth more fully below, it is not clear to the Court why Plaintiff chose to file a bankruptcy where a Chapter 13 debtor has a limited ability to "forcibly unwind" a contract over pursuing his state law claims in state court.

[6] This argument is without merit. The case cited, *Harry Rubin & Sons, Inc., supra*, is a sale of goods case applying the statute of frauds provision of the Uniform Commercial Code ("UCC"). The UCC is not applicable to transactions involving real estate. *See e.g., Lyndora Hotel, Inc. v. Koch*, 2018 WL 3800062, at *4 (Pa. Super. Ct. 2018) ("[T]he UCC does not apply to real estate or other transactions that do not involve the sale of goods....").

9

consideration." *Flegal v. Hoover*, 27 A. 162 (Pa. 1893); accord *Dreifus v. Columbian Exposition Salvage Co.*, 45 A. 370, 371 (Pa. 1900). "Rescission is a mutual agreement by the parties to an existing contract to discharge and terminate the rights and duties thereunder." 29 Williston on Contracts §73:15 (4th ed.).

Generally, a mutual assent to cancel or abandon a contract may be expressed either orally or in writing, or by the conduct of the parties. *Allardice v. McCain*, 101 A.2d 385, 387 (Pa. 1953). In certain limited circumstances, an inference of assent may be made if a party expresses an intention to abandon performance under a contract and the other party fails to object. *Id.* However, for an oral rescission of a contract for the sale of land to be effectual against the purchaser, there must be some unequivocal act – such as yielding up possession of the real estate. *Id.* (citing *Brownfield's Ex'rs v. Brownfield*, 25 A. 92, 93 (Pa. 1892)); accord *Kirk v. Brentwood Manor Homes, Inc.*, 159 A.2d 48, 50-51 (Pa. Super. Ct. 1960).

Whether the parties have agreed to rescind a written contract is a question of intent, which is an issue of fact. *Kirk*, 159 A.2d at 51 (citing *Richardson v. Moyer*, 26 A. 21 (Pa. 1893)). "Where there is no ambiguity in the agreement to rescind the underlying contract, a court may determine as a matter of law that the provisions of that contract have been rescinded." *Aquatrol Corp. v. Altoona City Auth.*, 2006 WL 2540797, at *5 (W.D. Pa. 2006), aff'd, 296 F. App'x 221 (3d Cir. 2008) (citing *Wathen v. Brown*, 189 A.2d 900, 903 (Pa. Super. Ct. 1963)).

The September 6th Letter suggests that the parties may have had discussions regarding rescission but it appears that Defendants attached a condition, *i.e.*, requirement that Plaintiff be appointed a guardian, to any rescission. Plaintiff's offer to rescind appears to have been rejected and therefore, this rebuts any inference that there was an agreement to mutually rescind the transfer of the Property. Thus, the facts that Plaintiff points to suggest an inference of mutual rescission

10

but Plaintiff offered no further evidence (in the form of affidavits or deposition testimony) to support a finding of a mutual rescission, such that a directed verdict should be entered in Plaintiff's favor.

Plaintiff heavily relies on the correspondence his Counsel sent to Mr. Showalter, however, the September 6th Letter more conclusively implies that there was no mutual rescission because Defendants indicated that they would rescind only if a guardian was appointed for Plaintiff. Accordingly, the Court concludes there is an issue of material fact whether the parties mutually agreed to rescission of the Deed.

**B.      Constructive Fraudulent Transfer**

Count I of the Amended Complaint is premised on 11 U.S.C. §548(a)(1)(B) pursuant to which Plaintiff seeks to avoid the transfer of the Property as a constructively fraudulent transfer and to recover the Property under §550. Plaintiff contends that he transferred his interest in the Property on July 26, 2018 which was within two years of his filing for bankruptcy. He maintains that no consideration was exchanged for the transfer, and at the time of the transfer, he was insolvent. Plaintiff argues that any purported consideration fails because the $1.00 was never paid, Defendants have yet to build the house where he was promised he could live, and a promise to furnish support is not consideration under §548(d)(2)(A).

Defendants dispute any claim that Plaintiff did not receive reasonably equivalent value in exchange for the transfer of the Property. Defendants contend that there was consideration in the form of the right to live on the Property and the right to live in the house that Defendants were to build on the Property. They further argue that Plaintiff thwarted any attempts to build the house.

11

Plaintiff moved for summary judgment on Count I of his Amended Complaint. As the moving party and the party with the burden of proof at trial, Plaintiff bears the burden to show there is no material factual issue and he is entitled to judgment as a matter of law. Because it appeared that Plaintiff was seeking to invoke directly the Chapter 13 Trustee's avoidance power under §548(a)(1), and because neither party addressed the issue in their respective briefs, the Court requested further briefing on Plaintiff's authority to assert the Chapter 13 Trustee's avoidance powers.

In his supplemental brief, Plaintiff informs the Court that it conflated the concepts of Article III standing and real party in interest under Rule 17(a), which is frequently referred to as "prudential standing."[7] Dkt. # 159 at 3. Instead of addressing the issue simply and concisely, Plaintiff focuses on an unnecessary and extended discussion of constitutional standing. Plaintiff finally gets to the crux of the argument at page 8 of his brief and argues that Defendants did not raise Plaintiff's authority to assert the Trustee's avoidance powers and therefore, waived any objection to real party in interest. *Id.* at 9-10. Plaintiff further asserts that even if the issue has not been waived, he has prudential standing arguing that cases cited in the Court's February 27th Order do not apply to this case or "actually bolster Plaintiff's claim for standing." *Id.* at 10. Plaintiff argues the "weight of authority supports standing for a Chapter 13 Debtor with a 100% plan to obtain a fresh start by setting aside the transfer regardless of 522(g) or (h) [sic]." *Id.* at 11. Plaintiff cites exactly one case – *In re Cohen*, 305 B.R. 886 (B.A.P. 9th Cir. 2004).[8]

---

[7] Plaintiff requested that the Court decline to dismiss the case for lack of standing, or alternatively, to allow Plaintiff leave to file a motion to convert the case to Chapter 11.

[8] Taking a holistic approach to the Bankruptcy Code and the Chapter 13 scheme, the Ninth Circuit B.A.P. in *Cohen* held that a Chapter 13 debtor holds avoidance powers *concurrently* with the Chapter 13 Trustee. In that case, the debtors were seeking to utilize §544 avoidance powers to fund their plan, which would be consistent with §550's mandate that recovery be for the benefit of the estate.

12

Plaintiff alternatively argues that he meets the requirements of §522(g) and (h). However, he disputes that the statutory text provides for avoidance of only the exemption amount. He asserts that he is able to avoid the transfer of the Property in its entirety for his benefit. Plaintiff cites no authority for this proposition.

Not surprisingly, Defendants contend that Plaintiff as a Chapter 13 debtor has no standing to bring avoidance actions unless it is through the mechanism of §522(g) and (h), where a debtor may exempt the recovered property. Dkt. # 161. Defendants argue that the plain language of the statute is controlling and §548 provides for avoidance by the trustee – not the trustee "and other parties in interest." *Id.* at 5-6. Defendants also argue against conferring derivative standing on Plaintiff because he does not meet the requirements. *See e.g., In re Demeza*, 582 B.R. 868, 876 (Bankr. M.D. Pa. 2018); *In re Rosenblum*, 545 B.R. 846, 863 (Bankr. E.D. Pa. 2016).

The starting point here is with Plaintiff's authority to avoid the transfer under §548(a)(1)(B) in place of the Trustee. There is ample authority that a Chapter 13 debtor may avoid transfers under §§544, 547, 548, and 549, if the debtor is utilizing §522(g) and (h) to protect his or her exemptions. *See In re Hansen*, 332 B.R. 8 (B.A.P. 10th Cir. 2005) (in context of §544); *In re Neiva*, 2024 WL 544049, at *8 (Bankr. D. Mass. 2024) (in context of §544); *In re Wright*, 649 B.R. 625 (Bankr. D.N.J. 2023) (in context of §548); *In re Nealy*, 623 B.R. 278, 283 (Bankr. D.N.J. 2021) (in context of §547); *In re Kalesnik*, 571 B.R. 491 (Bankr. D. Mass. 2017) (in context of §544); *In re Funches*, 381 B.R. 471 (Bankr. E.D. Pa. 2008) (in context of §544); *In re Ryker*, 315 B.R. 664 (Bankr. D.N.J. 2004) (in context of §548).

However, contrary to Plaintiff's assertion, the weight of authority is *against* a Chapter 13 debtor directly asserting the trustee's avoidance power. *See In re Smith*, 459 B.R. 571, 572 (Bankr. M.D. Pa. 2011) (stating that clear majority of Circuit Courts and Appellate Panels conclude that

Chapter 13 debtors lack authority to utilize Trustee avoidance powers and collecting cases). Furthermore, the Third Circuit has already concluded that based on the plain language of the statute, a Chapter 13 debtor may not utilize the Trustee's power under §544. *See In re Knapper*, 407 F.3d 573, 583 (3d Cir. 2005). The result here should not be any different. The plain language of §548(a)(1) states "the *trustee* may avoid any transfer…" (emphasis added). It provides in material part:

> (a)(1) The trustee may avoid any transfer … of an interest of the debtor in property, or any obligation … incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition…

11 U.S.C. §548(a)(1).

Unlike Chapter 11 and Chapter 12,[9] debtors filing under Chapter 13 of the Bankruptcy Code have not been granted the full range of the trustee's powers. *See Wright*, 649 B.R. at 628. Section 1303 provides a Chapter 13 debtor with only the rights and powers of the Trustee under certain subsections of §363. Section 1303 specifically does not include the avoidance provisions. *See Hanson*, 332 B.R. at 13 ("Congress knew how to give debtors avoidance powers (as evidenced by § 522(h)); Congress could also have expressly given "debtors" the avoiding powers of § 544, § 545, § 547, § 548, and § 549. Instead, Congress expressly conferred the avoiding powers on the trustee."). Further, the United States Supreme Court in *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6-7 (2000) has held "[w]here a statute ... names the parties granted [the] right to invoke its provisions, ... such parties only may act." Thus, based on the statutory language and relevant case law, the Court concludes that Plaintiff may not exercise directly the Trustee's avoidance powers under §548(a)(1).

---

[9] *See* 11 U.S.C. §§1107, 1203.

Case 4:20-ap-00060-MJC   Doc 174   Filed 06/07/24   Entered 06/07/24 16:01:14   Desc
Main Document     Page 14 of 30

Plaintiff attempts to resuscitate the fraudulent transfer claim by arguing that Defendants waived the issue. Plaintiff cites cases for the proposition that a delay in raising the issue until the time of trial is too late.[10] However, the Court raised the issue, which it may do so *sua sponte*. *See Allstate Ins. Co. v. Hughes*, 358 F.3d 1089 (9th Cir. 2003) (raising issue of real party in interest *sua sponte*); *Lipson v. Supercuts Inc.*, 1996 WL 435042 (N.D. Ill. 1996) (citing *Weissman v. Weener*, 12 F.3d 84, 85-86 (7th Cir. 1993)) (same); *Kowaleski v. Dir., Off. of Workers' Comp. Programs, U.S. Dep't of Lab.*, 879 F.2d 1173 (3d Cir. 1989) (same). Furthermore, Defendants raised as an affirmative defense in their Answer "misjoinder of parties," so the issue is properly before the Court.

Even if the Court were to conclude that the issue had been waived, Plaintiff would be no closer to the relief he seeks, *i.e.*, to recover a fee simple interest in the Property.[11] Plaintiff overlooks the extent of any recovery the Trustee would have if the transfer were avoided. If Plaintiff steps into the shoes of the Trustee, he would have only the rights the Trustee has under §550. Section 550(a) provides:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, *for the benefit of the estate*, the property transferred, or, if the court so orders, the value of such property …

11 U.S.C. §550(a) (emphasis added).

---

[10] This matter is before the Court on summary judgment, well ahead of trial. This adversary proceeding is nearing the four year mark. It languished in the pleading stage for almost two years due to the seemingly endless string of motions to dismiss from both sides. Delays have been caused by careless and imprecise pleading in the complaint, the amended complaint, and the counterclaims, failure to state actual facts on summary judgment, an unusual motion in *limine* filed the day of oral argument on summary judgment, as well as the Sanctions Motion. The latest delay was Plaintiff's Expedited Motion for a Temporary Restraining Order, which required expedited treatment only because Plaintiff waited to oppose a notice of deposition until *two* days prior to the scheduled deposition. Plaintiff's behavior has been a significant contributing factor to the delay in this proceeding.

[11] At argument, Plaintiff's Counsel seemed to believe, without citation to any authority, that Plaintiff could avoid the transfer, pay the creditors of the estate, and retain any remaining value.

Thus, Plaintiff may recover the property transferred or the value only if it is for the "benefit of the estate." *See In re Majestic Star Casino, LLC*, 716 F.3d 736, 761 n.26 (3d Cir. 2013) ("a debtor may avoid transfers and recover transferred property or its value only if the recovery is 'for the benefit of the estate'"); *In re Messina*, 687 F.3d 74, 82 (3d Cir. 2012) ("debtor is not entitled to benefit from any avoidance") (citing *In re Cybergenics Corp.*, 226 F.3d 237, 244-47 (3d Cir. 2000)); *Wright*, 649 B.R. at 631. Here, Plaintiff would not be avoiding and recovering the Property for the benefit of creditors. Rather, Plaintiff is seeking recovery of the Property for himself, without any limitation. At oral argument, Plaintiff's Counsel took the position that avoidance of the Property was necessary to fund Plaintiff's Plan. To be clear, the confirmed plan is funded from Plaintiff's income and does not rely on funding from any avoidance actions. The confirmed plan does not mention any adversary proceedings and to suggest otherwise is disingenuous. Therefore, even if Plaintiff were allowed to proceed under §548(a), Plaintiff would fail to satisfy the requirements under §550.

As a last ditch effort at salvaging the §548 claim, Plaintiff then reverses course and argues that he meets the requirements of §522(h). Critically, Plaintiff did not plead §522(h) in his Amended Complaint. In fact, Section 522(g) and (h) are not mentioned at all and Plaintiff in his wherefore clause clearly requests recovery of the transfer or to obtain a judgment for the value of the Property (not to protect any exemption). Plaintiff has not moved to amend the Amended Complaint to include §522(g) and (h), nor has he argued whether he has any exemptions remaining to establish any benefit under §522(g) and (h).

16

Nevertheless, Plaintiff maintains that under §522(h) he is not limited to his exemption amount.[12] Quite frankly, Plaintiff's argument is difficult to follow on this point and trails off in places. *See* Dkt. # 159 at 11. Plaintiff states the *Wright* Court erred in holding that a Chapter 13 debtor may only avoid a transfer to the extent of any available exemption. Plaintiff's Counsel fails to explain why the *Wright* Court erred. Instead, Plaintiff's Counsel argues that a debtor utilizing §522(h) has the same rights as the Trustee and if the Trustee could only obtain the amount of a debtor's exemption, there would never be any transfers of real property avoided – the transferee would just pay off the trustee with a transfer of funds in the amount of the homestead exemption. Plaintiff's Counsel cites no authority for this contention.

Here, Plaintiff's Counsel misunderstands the Trustee's rights under §550 and the debtor's rights under §522(h). When the Trustee utilizes §548 to avoid a transfer, the Trustee is constrained by §550. The Trustee may avoid a transfer to the extent it benefits the estate, *i.e.*, creditors. Plaintiff's Counsel is under the misapprehension that a Chapter 13 Trustee may avoid fraudulent transfers at will and any excess will automatically flow to the debtor. When a Chapter 13 debtor utilizes §522(h) to avoid a transfer pursuant to §548, the debtor must consult §522(g), (i), and (j), as well as §550. As the *Wright* Court correctly explained, Section 522(i) specifically proscribes the debtor's rights under §522(h). 649 B.R. at 630. Section 522(i)(2) preserves the avoided transfers for the benefit of the debtor only "to the extent that the debtor may exempt such property under subsection (g) of this section or paragraph (1) of this subsection." Plaintiff's argument obviously overlooks §522(j) as well. Subjection (j) is a further limitation on the debtor's ability to exempt property that is avoided – which is, to any available exemptions. As one commentator

---

[12] If that were the case, then it is unlikely Congress would have included the provision under a section of the Code entitled "Exemptions." It is unfortunate that Plaintiff chose to file this bankruptcy case with the apparent misunderstanding of the "avoiding" limitations of a Chapter 13 debtor, instead of pursuing his state law claims in state court.

17

explained, "the debtor's use of the avoiding powers does not expand the extent of exemptions." 4 Collier on Bankruptcy ¶522.12 (16th 2024). "If the debtor avoids a transfer of property, and the value of that property exceeds the amount that may be claimed as exempt under the applicable exemption provision, the excess value of the property would remain subject to the transfer." *Id.*

Based on the above, the Court concludes that Plaintiff lacks the statutory authority to directly assert the Chapter 13 Trustee's avoidance power under §548. Because Plaintiff has not asserted §522(g) and (h) in the Amended Complaint, Plaintiff's fraudulent transfer claim fails. Summary judgment on Count I will therefore be denied and summary judgment will be entered in favor of Defendants, *see* Fed. R. Bankr. P. 7056(f).

## C. Breach of Contract

Plaintiff moved for summary judgment on Counterclaim I, which is Defendants' claim for breach of contract.

Defendants claim that the Deed conveyed the Property to Defendants and reserved a life estate in favor of Plaintiff. According to Defendants, the Deed established a contractual relationship between the parties. *See* Dkt. # 68 at ¶80. They argue that there is no ambiguity in the Deed and the intent of the parties is to be determined solely from the express language. Dkt. # 122 at 10. They claim that Plaintiff breached the terms of the contract by contesting and/or rejecting its terms and challenging the conveyance of the Property. More specifically, they argue that Plaintiff has precluded Defendants from finalizing the selection of the contractor, obtaining financing, and beginning construction on the house. They further contend that Plaintiff's failure to cooperate has caused delays which in turn has increased the cost of materials and labor and

prevented Defendants from enjoying the Property. *Id.* at 11. Defendants therefore seek damages of $25,000 plus costs.

In response, Plaintiff denies that any contract was formed due to lack of consideration and fraud. In support of the Motion for Summary Judgment, Plaintiff claims that the breach of contract Counterclaim fails because Defendants failed to establish any duty of Plaintiff under the contract, breach of that duty, causation, or damages. Plaintiff points out that Defendants have submitted no admissible evidence in support of its claim. Plaintiff therefore, requests that summary judgment be entered in his favor on Defendants' breach of contract claim.

Under Pennsylvania law, there are three elements to establish a claim for breach of contract: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *J.F. Walker Co. v. Excalibur Oil Grp.*, Inc., 792 A.2d 1269, 1272 (Pa. Super. 2002) (quoting *Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 884 (Pa. Super. 2000)). Defendants bear the burden of proof on all elements of their claim for breach of contract. *See Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 102 (3d Cir. 2001) (applying Pennsylvania law and citing *In re Estate of Dixon*, 233 A.2d 242, 244 (Pa. 1967)). This includes the existence of a contract and its material terms. Defendants claim the contract is the Deed.

The Deed at issue in this proceeding appears to convey Plaintiff's interest in the Property to Plaintiff and Defendants, as grantees, for one dollar and "other good and valuable consideration." The Deed contains two special conditions ("Special Conditions"):

1.     That James A. McNeal shall have the right to live in the home which Lyle P. Brouse, Jr. and Jessica M. Brouse are building on the subject premises for and during the term of his natural life; and

19

2.    James A. McNeal shall have the right to raise poultry on a portion of the subject premises of three (3) acres or less.

Defendants argue that under the Deed, the material terms require Defendants to build a home on the Property and Plaintiff is required *inter alia*, to cooperate with Defendants in securing financing and assist in selecting the location and type of home to be built. However, none of these terms actually appear in the Deed. The Deed itself contains no specific contractual provisions that would give rise to any duty on the part of Plaintiff. The Deed is completely silent on size and type of home, financing, selection of contractors, timing, location, etc.

At best, the Special Conditions are the only provisions in the Deed that might possibly point to a *prior* oral agreement between the parties. However, in order for any action on a prior agreement to be viable, Defendants would have to overcome the presumption that the merger doctrine applies.[13] Defendants have not argued that a prior oral agreement exists.

Defendants' evidence, which consists of the Deed and their individual affidavits, does not support any element of the claim for breach of contract. Because Defendants failed to provide evidence of the material terms of the contract, Plaintiff's breach, and any resultant damages, the Court concludes that Plaintiff has sustained his burden on summary judgment. Accordingly, Plaintiff's Motion for Summary Judgment as to Defendants' breach of contract claim will be granted.

---

[13] "The general rule, in the absence of fraud or mistake, and of an intent to the contrary, is that an antecedent contract for the purchase of land is merged in the deed, [and] upon the delivery and acceptance of the deed, there exists a prima facie presumption of merger." *Dobkin v. Landsberg*, 116 A. 814, 817 (Pa. 1922) (internal citation and quotation marks omitted).

20

**D.      Slander of Title**

Defendants brought a second Counterclaim for slander of title, alleging that Plaintiff spoke to someone at the Area Agency on Aging ("Agency") where he made a statement to them that Defendants swindled him out of the Property.  Defendants asserted that the statement was made with malice and an intent to injure Defendants.  According to Defendants, this statement slandered Defendants' title to the Property.  Counterclaim II also alleged Plaintiff made multiple similar statements throughout the community.  Defendants sought damages in the amount of $25,000.

Plaintiff moved for summary judgment on this Counterclaim as well.  Plaintiff argues that Defendants failed to plead the elements for *defamation*.  *See* Dkt. # 123 at 8.  Oddly, Plaintiff appears to be using the terms "slander of title" and "defamation" interchangeably, and all of the cases Plaintiff cites are defamation cases.[14]  Plaintiff nonetheless argues that even if Defendants had pleaded the requisite elements, the claim fails because any alleged statement was not published within the one year statute of limitations period.[15]  *See* Dkt. # 123 at 6.

Plaintiff has confused a slander of title claim with a slander or defamation claim.  They are two separate and distinct causes of action – they are not interchangeable.[16]  As the Pennsylvania Superior Court explained, "disparagement of title is intended to protect the owner's saleable interest in the property" versus a pure defamation claim, which "is designed to protect the

---

[14] Ironically, *Miller v. Shubin*, 2016 WL 2752675 (M.D. Pa. 2016), which Plaintiff cites in his brief, involves a slander of title claim, *see* 2016 WL 2752675, at *9 (discussing injurious falsehood), however, Plaintiff quotes *Miller* for its discussion on defamation.  This case alone should have informed Plaintiff that defamation is a distinct cause of action from slander of title.

[15]  Because neither party presented actual evidence of Plaintiff's alleged statement to the Area Agency on Aging or when it occurred, the Court is unable to determine whether the one year statute of limitation applies to preclude the claim.

[16] The Pennsylvania Supreme Court noted that "an action for untruthful disparagement of a property interest resembles actions for defamation" but indicated there are several important differences between the two.  *Menefee v. Columbia Broad. Sys., Inc.*, 329 A.2d 216, 219 (Pa. 1974).

21

reputation of the plaintiff." *Triester v. 191 Tenants Ass'n*, 415 A.2d 698, 702 (Pa. Super. 1979). However, many of the elements for a defamation claim are similar to a slander of title claim. *Compare* Restatement (Second) of Torts §613 (burden of proof for defamation) *with* Restatement (Second) of Torts §651 (burden of proof for injurious falsehood).

Under Pennsylvania law, "[d]isparagement of title, variously labeled slander of title, defamation of title, or in other contexts, slander of goods, trade libel or injurious falsehood, is the false and malicious representation of the title or quality of another's interest in goods or property." *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 246 (Pa. 2002) (quoting *Triester*, 415 A.2d at 701).

To prevail on a cause of action for slander of title, a plaintiff must establish: "(1) the statement is false; (2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; (3) pecuniary loss does in fact result; and (4) the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity." *Pro Golf Mfg.*, 809 A.2d at 246 (2002) (citing Restatement (Second) of Torts §623(A)); accord *Lincoln v. Magnum Land Servs., LLC*, 2013 WL 2443926, at *5 (M.D. Pa. 2013), aff'd, 560 F. App'x 144 (3d Cir. 2014); *see also* Restatement (Second) of Torts §651. Another essential element is that the statement is made with malice. *See Kalian at Poconos, LLC v. Saw Creek Estates Community Ass'n, Inc.*, 275 F. Supp. 2d 578, 591 (M.D. Pa. 2003) ("The element of malice, express or implied, in making slanderous statements respecting the title of another's property, is essential to the recovery of damages." (quoting *Reed Road Assocs. v. Campbell*, 582 A.2d 1373, 1374 n.2 (Pa. Super. 1990))).

For a slander of title claim, a "publication is the communication of an allegedly defamatory or slanderous statement by the defendant to a third person." *Stewart v. SWEPI, LP*, 918 F. Supp.

22

2d 333, 342 (M.D. Pa. 2013) (citing *Sobel v. Wingard*, 531 A.2d 520, 522 (Pa. Super. 1987)).  The

statute of limitations for slander of title is one year from publication.  *Lincoln*, 2013 WL 2443926,

at *5 (citing 42 P.A.C.S. §5523(1) and *Pro Golf Mfg.*, 809 A.2d at 246)).

   Here, Plaintiff, as the moving party without the burden of proof at trial, may point to the

lack of evidence in the record on any element of Defendants' claim to sustain his burden on

summary judgment.[17]  *See In re Polichuk*, 506 B.R. 405, 422 (Bankr. E.D. Pa. 2014) (citing *Orson,*

*Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996)).  Defendants were required to

come forward with admissible evidence in response to the Motion for Summary Judgment in order

to avoid the entry of summary judgment against them.  *See Polichuk*, 506 B.R. at 424.  As stated

previously, Defendants submitted their individual affidavits.  With respect to the slander of title

claim, Defendants' affidavits state:

> 16.  That during the period of time, and less than a year before James McNeal filed
> his bankruptcy proceeding, Jessica and I began to hear that James McNeal was
> spreading a false rumor that we had cheated him from his property and that we were
> frauds in how we acquired the property which damaged our reputation in the
> community, slandered our title to the property and slowed our efforts to expand our
> business efforts.
>
> 17.  That people who heard these comments are:
>
> > Josh Woolsey
> >
> > Marianne Stump
> >
> > Wyatt Brouse
> >
> > Nickole Brouse
> >
> > Randy Reedy

---

[17]  Because there is absolutely no evidence on Defendants' slander of title Counterclaim, the Court will overlook the
fact that Plaintiff has argued the wrong elements and will apply the correct standard in deciding the Motion for
Summary Judgment.

18.  That James McNeal in his deposition confirmed that he told people at the Area Agency on Aging that he had been cheated by Lyle Brouse and Jessica Brouse (*See* deposition of James McNeal attached to this response as Exhibit "A").

Lyle Brouse Aff. at ¶ 16-18.[18]

The Brouse affidavits indicate that Plaintiff "confirmed that he told people at the Area Agency on Aging that he had been cheated by Lyle Brouse and Jessica Brouse."  For this contention, each affidavit refers to Plaintiff's deposition.  Defendants' Counsel questioned Plaintiff regarding the alleged statements he made to an individual at the Agency as follows:

> Q.  Who did you talk to at Area Agency on Aging about this?
>
> A.  Well, they changed their people, too.  I mean ….
>
> Q.  My question is, who did you talk to?  It may be different people now, but who did you talk to when you went in?
>
> A.  Don't have her name.

McNeal Deposition at 30-31.  The above two questions were the full extent of the inquiry regarding the Agency and there were no further questions related to Defendants' slander of title claim in this deposition.  Remarkably, Defendants' Counsel did not inquire as to when Plaintiff spoke to the individual at the Agency, what the nature of the conversation was, whether he mentioned Defendants or the Property by name, why he contacted the Agency, etc.

At this stage of the proceeding, Defendants were required to provide credible, tangible evidence of a false statement by Plaintiff affecting title to the Property.  In direct contradiction to what Defendants' affidavits proclaim, Plaintiff's deposition testimony confirmed nothing as far

---

[18]  Jessica Brouse made nearly identical statements in her affidavit at ¶¶ 15-17.

any statement he allegedly made to anyone at the Agency.  To suggest that the deposition testimony confirmed Plaintiff "told people at the Area Agency on Aging that he had been cheated by Lyle Brouse and Jessica Brouse" goes far beyond the bounds of credulity.  As it stands, the only evidence in the record are Defendants' self-serving affidavits where they state they heard, not directly but from other people, that Plaintiff was spreading a false rumor that he had been defrauded by Defendants.  These statements are hearsay and would be inadmissible at trial.  Defendants would have had to submit affidavits of the individuals who heard the alleged statements.  But, despite knowledge of these individuals, Defendants failed to obtain affidavits from them.  Defendants, therefore, lack any shred of evidence of a false statement or publication of that false statement.[19]

Furthermore, Defendants produced absolutely no evidence of: Plaintiff's malice in making the alleged statement, Plaintiff's intent to cause a pecuniary loss to Defendants with the alleged statement, Plaintiff's knowledge of the falsity of the alleged statement, or proof any pecuniary loss Defendants suffered from the alleged statement.[20]  The Court finds that the slander of title claim is wholly unsubstantiated and the claim must fail.  The Court therefore, concludes that Plaintiff

---

[19]  As a seeming afterthought, Defendants now assert in their brief that this adversary proceeding "perpetrated and exacerbated [Plaintiff's] prior statements against the title interest of Lyle and Jessica Brouse which created a cloud on the title."  Dkt. # 122 at 14.  Defendants never raised the filing of this proceeding as an instance of slander of title in their Counterclaim.  They may not do so now.  Even if the Court were to allow an amendment at this stage, Plaintiff has a privilege as a party to a litigation.  *See Triester*, 415 A.2d at 702; Restatement §635 illustration 4; accord *Schwartz v. OneWest Bank, FSB*, 2013 WL 6037078, at *3 (E.D. Pa. 2013), aff'd, 614 F. App'x 80 (3d Cir. 2015).

[20]  Because of Plaintiff's misunderstanding of the elements for slander of title to real estate, Plaintiff submitted evidence of other potential causes of damage to Defendants' *reputation or business*.  This is not the type of damage the claim is meant to guard against.  Pecuniary loss in this instance most commonly relates to a missed opportunity of a sale of the real estate.  *See Menefee*, 329 A.2d at 220 ("The publication of matter disparaging to another's property in land, chattels or intangible things or disparaging to the quality thereof causes financial loss resulting from the impairment of their vendibility if the publication of the disparaging matter is a substantial factor in determining a third person not to buy or lease the thing disparaged." (quoting Restatement §632)); Restatement (Second) of Torts §633 cmt. c. ("The most usual manner in which a third person's reliance upon disparaging matter causes pecuniary loss is by preventing a sale to a particular purchaser.").

has sustained his burden on his Motion for Summary Judgment and accordingly, summary judgment will be entered in Plaintiff's favor on Counterclaim II.

## VII.    Motion in *Limine*

As stated above, Plaintiff filed his Motion in *Limine* on the morning of oral argument on his Motion for Summary Judgment.  Plaintiff seeks to strike inadmissible hearsay from Defendants' affidavits and to deem admitted any statement of material fact that was not specifically denied.

First as to the affidavits, the statements that Plaintiff seeks to strike relate to Defendants' claim for slander of title.  Defendants stated that they heard rumors that Plaintiff was telling others that he had been swindled out of his property by Defendants.  The Court recognizes Defendants' self-serving statements for what they are – a last ditch attempt to stave off summary judgment. The Court did not rely on the statements in its determination of the claim.  Therefore, it is unnecessary at this time to strike the statements.

As to Plaintiff's request to deem certain facts as admitted, this too is an unnecessary exercise.  Given the Court's disposition of the Motion for Summary Judgment, a detailed ruling on each point in Plaintiff's Motion in *Limine* would not serve to advance any of the pending issues in the case.  This is especially true with regard to the majority of Plaintiff's "material facts." Because Plaintiff conflated slander of title with defamation, he attempted to present evidence of other causes for harm to Defendants' reputation and/or business with social media posts regarding Defendants' life style and business dealings.  As explained above, the pecuniary loss in a slander of title claim in the context of real property is the "impairment of vendibility or value [directly] caused by disparagement."  Restatement §633(1)(a).  This is not a defamation claim.  Thus, the

26

"facts" Plaintiff states at ¶ 39 through ¶ 79 do not appear to have any relevance to the salability of the Property. Consequently, the Court will deny the Motion in *Limine* as moot.

## VIII. Sanctions Motion

Plaintiff moved for sanctions against Defendants under Rule 9011 and 28 U.S.C. §1927.

Rule 9011(c) has a specific procedure to be followed prior to sanctions being imposed:

> (1) the motion must be made separate and apart from other motions or requests; (2) it must describe the specific representations or conduct that violated the Rule, and (3) it may not be filed with the court unless, within twenty-one days of service of the motion, the non-movant has not withdrawn or corrected the challenged behavior.

*In re Dizinno*, 559 B.R. 400, 414 (Bankr. M.D. Pa. 2016) (citing *In re Ryan*, 411 B.R. 609, 616 (Bankr. N.D. Ill. 2009)). Referred to as the "safe harbor" provision, Rule 9011(c) allows a party who is alleged to have committed a violation of Rule 9011, a period of twenty-one (21) days to correct or withdraw the pleading before a Rule 9011 motion is filed. *In re Klitsch*, 587 B.R. 287, 294 (Bankr. M.D. Pa. 2018).

Plaintiff's Counsel admitted at the hearing on the Sanction Motion that she did not follow the procedure under Rule 9011(c). Consequently, any relief sought under Rule 9011 must be denied.

Plaintiff also moved under 28 U.S.C. §1927 for sanctions against Defendants seeking an award of attorney's fees. Plaintiff's main complaints are that Defendants refused to concede that the plain text of the Bankruptcy Rules for service applied to this proceeding; they continued citing statutes and case law that do not apply to the causes of action in this proceeding; they have utterly failed to produce evidence in support of their claims; they have presented patently frivolous

27

positions to this Court, which they have refused to abandon; and they used inflammatory language like "garbage" and "pathetic" in response to Plaintiff's material facts. According to Plaintiff, this unprofessional behavior justifies the award of attorney's fees.

Section 1927 provides:

> Any attorney or other person … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. §1927. In order for Plaintiff to prevail on his motion he must establish "that an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; (4) in bad faith or by intentional misconduct." *In re Delaware Valley Lift Truck Inc.*, 640 B.R. 342, 366-67 (Bankr. E.D. Pa. 2022) (citing *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101 (3d Cir. 2008) and *In re Prudential Ins. Co. America Sales Practice Litig.*, 278 F.3d 175, 188 (3d Cir. 2002)). Sanctions under this section may be imposed only when the conduct rises to the level "of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation." *LaSalle Nat'l Bank v. First Conn. Holding Grp., L.L.C.*, 287 F.3d 279, 289 (3d Cir. 2002) (quoting *Baker Indus., Inc. v. Cerberus Ltd.*, 764 F.2d 204, 208 (3d Cir. 1985)). The Court must find that "counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal." *LaSalle Nat. Bank*, 287 F.3d at 289.

It is an understatement to say that this proceeding has been contentious from its inception. Both sides have aggressively engaged in significant motion practice throughout the course of this case which contributed to the significant delay in finally progressing to dispositive motions. It's

clear from the disposition of Plaintiff's Motion for Summary Judgment, that the claims that each side brought were less than stellar. Both sides took positions on certain claims and made legal arguments in support of those positions that were tenable at best.

For instance, as set forth above, Plaintiff sought to invoke the Chapter 13 Trustee's avoidance power under §548 claiming the weight of authority was in his favor, when the clear import of the case law is decidedly against that view. Furthermore, Plaintiff has injected questionable and scandalous materials about Defendants while citing the elements for defamation and the relevant case law when Defendants brought a claim for slander of title of real estate. Plaintiff failed to recognize that slander of title for commercial disparagement is different than disparagement to title to real estate. Defendants' reputation and/or lost sales to Defendants' business is irrelevant to the latter. This misstep required Defendants to respond to the materials that were dredged up. Their reaction was certainly justified, however, Defendants' Counsel should have chosen more appropriate language in his response.

As far as Defendants' Counterclaims, the Court determined that they survived Plaintiff's motions to dismiss so the Counterclaims were not patently frivolous. *See e.g., In re Paige*, 564 B.R. 806, 810 (Bankr. M.D. Pa. 2016), aff'd sub nom. *Paige v. Lerner Master Fund, LLC*, 584 B.R. 502 (M.D. Pa. 2018), aff'd sub nom. *In re Paige*, 738 F. App'x 85 (3d Cir. 2018) (claims surviving motion to dismiss were likely to have evidentiary support after reasonable opportunity for further investigation or discovery). When put to their proof, Defendants obviously fell far short. However, it's unclear whether Defendants could not produce evidence to support their claims or whether Defendants decided not to continue to pursue their claims.

The Third Circuit has cautioned that sanctions should be imposed only in instances of serious disregard of the judicial process. *See Paige*, 564 B.R. at 809 (citing *In re Prosser*, 777

29

F.3d 154, 161 (3rd Cir. 2015)). At bottom, Plaintiff has not established that any of Defendants' Counsel's conduct was bad faith and sanctions are not appropriate. Therefore, the Sanctions Motion is denied.

## IX.    CONCLUSION

Based on the forgoing, the Court concludes that Plaintiff's Motion for Summary Judgment will be granted in part and denied in part. The Motion for Summary Judgment is granted on Defendants' Counterclaims and summary judgment will be entered in favor of Plaintiff. The Motion for Summary Judgment is denied on Plaintiff's fraudulent transfer and mutual rescission claims. Summary judgment will be entered in favor of Defendants on the fraudulent transfer claim. Plaintiff's Motion in *Limine* and Motion for Sanctions will be denied.

An appropriate order will be entered.

By the Court,

Mark J. Conway, Bankruptcy Judge
Dated: June 7, 2024